UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LATEIK MITCHELL,

                    Petitioner,          **DECISION AND ORDER**

        -vs-                             **No. 11-CV-6399(MAT)**

MARK BRADT,

                    Respondent.

## I.   Introduction

Pro se petitioner Lateik Mitchell ("Mitchell" or "Petitioner") has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mitchell is incarcerated at Attica Correctional Facility as the result of a judgment of conviction entered on January 14, 2005, in Monroe County Court of New York State following a jury verdict convicting him of four counts of Criminal Possession of a Weapon in the Second Degree (New York Penal Law ("P.L.") § 265.03(2)), four counts of Criminal Possession of a Weapon in the Third Degree (P.L. § 265.02(4)), six counts of Criminal Possession of a Weapon in the Third Degree (P.L. § 265.02(1)), one count of Reckless Endangerment in the First Degree (P.L. § 120.25), and one count of Unlawful Wearing of a Body Vest (P.L. § 270.20(1)).

## II.   Factual Background and Procedural History

Shortly before 1:00 a.m. on October 26, 2003, Patricia Frasier and her ten-year-old granddaughter were asleep in the second-floor bedroom of their house at 26-28 Shelter Street in Rochester,

New York. Petitioner and his five accomplices[1] drove up in a van and opened fire at the house with a variety of firearms. Police, who had been staking out the area, pulled over the van and arrested the occupants. Petitioner, who had been driving the van, was found to be wearing a bullet-proof vest. The police recovered six firearms from the van, including a Norinco "MAK 90" assault rifle, which was later determined to have been used in the shooting.

Following a jury trial, Petitioner was convicted of all sixteen counts in the indictment. On January 14, 2005, Petitioner was sentenced, as a second felony offender, to consecutive determinate sentences of fifteen years imprisonment on each of the second degree weapon possession convictions (P.L. § 265.03(2), relating to the Rossi .38 caliber, the AMT .380 caliber, the Ruger 9 millimeter, and the Norinco assault rifle); concurrent determinate seven year terms on four of the third-degree weapon possession convictions (P.L. § 265.02(4), relating to the same four weapons as in the second degree convictions, for possessing the weapons outside his home or place of business); consecutive three and one-half to seven years terms on two of the third-degree weapon

---

[1] Four of Petitioner's five co-defendants (Timothy Jackson, Larry Majors, Jamal Mason, and Lovelace Young) entered guilty pleas; Kelvin Hunt was tried separately and convicted. All of the convictions were affirmed by the Appellate Division, Fourth Department. See People v. Mason, 70 A.D.3d 1357 (4th Dept. 2010); People v. Young, 57 A.D.3d 1431 (4th Dept. 2008); People v. Majors, 55 A.D.3d 1288 (4th Dept. 2008); People v. Jackson, 52 A.D.3d 1318 (4th Dept. 2008); People v. Hunt, 52 A.D.3d 1312 (4th Dept. 2008).

possession convictions (P.L. § 265.02(4), relating to the Smith & Wesson .38 caliber and the Taurus .357 Magnum); concurrent three and one-half to seven year terms on the four remaining third-degree weapon possession convictions (P.L. § 265.02(1), relating to the four weapons charged in the second-degree possession counts, but for possessing a firearm and having previously been convicted of a crime); a consecutive three and one-half to seven year term on the Reckless Endangerment conviction; a consecutive two to four year term on the body vest conviction; and five years of post-release supervision on each of the determinate sentences.

On appeal, the Appellate Division, Fourth Department, of New York State Supreme Court found that the trial court erred in imposing consecutive, rather than concurrent, sentences for the various weapons-possession convictions and the body-vest conviction because "[t]he evidence at trial established only that [Petitioner] constructively possessed the firearms with respect to the criminal possession of a weapon counts of which he was convicted, and thus the People proved only a single actus reus." People v. Mitchell, 77 A.D.3d 1376, 1377-78 (4th Dept. 2010). Furthermore, Fourth Department, found the actus reus of the counts of criminal possession of a weapon is a material element of the offense of unlawful wearing of a body vest." Id. at 1378 (citation omitted). Those sentences accordingly were modified to run concurrently. Id. As modified, the judgment was affirmed. Id. The New York Court of

Appeals denied leave to appeal. <u>People v. Mitchell</u>, 15 N.Y.3d 954 (2010).

This timely habeas petition followed in which Petitioner asserts the following claims: (1) no stenographic record was made of the prosecutor's peremptory challenges at <u>voir dire</u> or of a <u>Batson</u> claim raised by the defense; (2) the trial court improperly denied Petitioner's request to charge the lesser included offense of fourth degree criminal possession of a weapon with respect to the four counts of second degree criminal possession of a weapon; (3) the trial court improperly "pyramided" two permissive presumptions; (4) the police violated Petitioner's Fourth Amendment rights by stopping the van; (5) the police lacked probable cause to search the van; and (6) the Appellate Division improperly failed to modify the sentence for the reckless endangerment conviction to run concurrently rather than consecutively.

For the reasons that follow, the request for a writ of habeas corpus is denied, and the petition is dismissed.

## III. Discussion

### A.   Exhaustion (Grounds One, Two, and Six)

A habeas court may not consider the merits of a claim unless it was fairly presented in federal constitutional terms to the "highest state court from which a decision can be had." <u>Daye v. Attorney Gen. of N.Y.</u>, 696 F.2d 186, 190 n.3 (2d Cir. 1982) (<u>en banc</u>). A petitioner may apprise the state courts of the

constitutional nature of his claims by explicitly arguing that a federal constitutional right was violated, either by citing to the Constitution, or by relying on pertinent federal cases employing a constitutional analysis, relying on state cases employing a constitutional analysis in like fact situations, asserting the claim in terms that call to mind a specific right protected by the Constitution, and alleging a fact-pattern well within the mainstream of constitutional litigation. Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005) (citing Daye, 696 F.2d at 194).

Respondent concedes that Mitchell has exhausted his claim regarding the permissive presumptions charged to the jury (Ground Three) and his Fourth Amendment claims (Grounds Four and Five). Respondent argues that the remaining claims (failure to make a complete record of voir dire (Ground One), failure to charge fourth degree criminal possession of a weapon as a lesser included offense (Ground Two), and erroneous imposition of consecutive sentences (Ground Six)) are unexhausted but should be deemed exhausted and procedurally defaulted. See Coleman v. Thompson, 501 U.S. 722, 732 (1991) (A federal claim is procedurally defaulted when a prisoner has "failed to meet the State's procedural requirements" for presenting it and has therefore "deprived the state courts of an opportunity to address [the claim] in the first instance.").

First, Respondent argues, although appellate counsel presented these three claims in her brief to the Fourth Department, she

couched them solely in state law terms. With regard to the voir dire claim, the Court disagrees. Appellate counsel cited People v. Harrison, 85 N.Y.2d 794 (1995), which involved a claim that the defendant's federal due process right to a fair appeal and his federal right to effective assistance of counsel on appeal were violated by the court's refusal to record the voir dire proceedings, including the lawyers' objections and the court's rulings on these objections. Id. at 795 (citations omitted). Although this is a state case, it referenced federal constitutional law in the same fact situation as presented by Mitchell's case.

However, the Court agrees with Respondent that the voir dire claim nevertheless is unexhausted because appellate counsel failed to specifically address that claim in her leave application. Appellate counsel stated that leave should be granted "primarily for two reasons: the coupling of two legal presumptions . . . violates due process, and the remaining consecutive aspect of the new sentence is contrary to law . . . ." Leave Application, Resp't Ex. F (Dkt. #6-1). Appellate counsel also requested that Petitioner's pro se appellate brief raising the Fourth Amendment issues be examined as part of the leave application. Id. Appellate counsel did not address any of the other issues raised in her brief to the Fourth Department, merely stating that the briefs and record before that court were enclosed. Id. Under Second Circuit law, Respondent is correct that the remaining claims not mentioned by

appellate counsel were not fairly presented to the New York Court of Appeals. See Jordan v. Lefevre, 206 F.3d 196, 198-99 (2d Cir. 2000) ("[A]rguing one claim in his letter while attaching an appellate brief without explicitly alerting the [New York Court of Appeals] to each claim raised does not fairly present such claims," even though petitioner sought leave "for all these reasons and [those] set forth in his Appellate Division briefs.").

With regard to the consecutive sentencing claim and lesser-included-offense claim, the Court agrees with Respondent they are unexhausted because they were solely presented in state law terms to the Fourth Department. See Baldwin v. Reese, 541 U.S. 27, 30-33 (2004) (finding ineffective appellate counsel claim to be unexhausted where petitioner raised it solely in state law terms in state court).

The voir dire and lesser-included-offense claims (Grounds One and Two) must be deemed exhausted but procedurally defaulted because it is procedurally barred from presentation to a state court. See Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) ("For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris v. Reed, 489 U.S. 255, 263 n. 9 (1989)). At this stage, Mitchell is procedurally barred from returning to state court to exhaust the voir dire and lesser-included offense claims

-7-

(Grounds One and Two). First, he has already completed his direct appeal. By statute, New York law used to specifically provide for only a single application for direct review. Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 170 (2d Cir. 2000) (relying on former New York Rules for the Court of Appeals § 500.10(a) (discussing leave applications for criminal appeals)). Section 500.10 has since been amended, and criminal leave applications are now addressed in N.Y. R. Ct. § 500.20. Although Rule 500.20 "does not specifically state that there may be only one application for appeal, see N.Y. R. Ct. § 500.20, such a restriction may be inferred," since "[b]oth Rule 500.20(d) and CPL § 460.10(5) provide a 30-day window for any such application to be filed; this time limit would be meaningless were multiple applications permitted." Colon v. Connell, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n. 4 (S.D.N.Y. July 9, 2009) (noting that both N.Y. R. Ct. § 500.20(d) and N.Y. Crim. Proc. Law § 460.10(5) provide a 30-day window for any such application to be filed; "this time limit would be meaningless were multiple applications permitted"); accord, e.g., Cunningham v. Conway, 717 F. Supp.2d 339, 365 (W.D.N.Y. 2010) (collecting cases). In addition, Section 500.20(a)(2) provides that the leave letter must indicate that "that no application for the same relief has been addressed to a justice of the Appellate Division, as only one application is available[.]" N.Y. R. Ct. § 500.20(a)(2).

Collateral review of Grounds One and Two in state court is also barred because "sufficient facts appear on the record of the proceedings underlying the judgment" to have permitted him to raise the claims on direct appeal. See N.Y. CRIM. PROC. LAW § 440.10(2)(c) (mandating that court dismiss motion to vacate if sufficient facts appeared on the record to have permitted direct review but defendant unjustifiably failed to raise claim on direct appeal). Because a state court would find Mitchell's unexhausted claims procedurally barred from state review, they are deemed exhausted. Grey, 933 F.2d at 120-21.

Ordinarily, federal courts may not review procedurally barred claims unless the petitioner can show both cause for the default and prejudice resulting therefrom, or that a fundamental miscarriage of justice would occur if the federal court declines to review the habeas claim. Coleman v. Thompson, 501 U.S. 722, 749-50 (1991). Here, Mitchell has not suggested any circumstance that would constitute cause for the default. Thus, there is no need to analyze whether prejudice resulted. Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985). The "fundamental miscarriage of justice" exception requires a showing of actual innocence, and Mitchell has not presented any new evidence suggesting that he could meet this standard. Murray v. Carrier, 477 U.S. 478, 496 (1986). As a result, Grounds One and Two are dismissed as procedurally barred from habeas review.

The consecutive sentencing claim (Ground Six), however, remains unexhausted because Mitchell could return to state court and attack the legality of his sentences by means of a motion pursuant to C.P.L. § 440.20. See Cuadrado v. Stinson, 992 F. Supp. 685, 687 (S.D.N.Y. 1998) (sentencing claim was unexhausted, because "unlike its counterpart for vacating a conviction, see N.Y. Crim. Proc. Law. § 440.10(2)(c), a motion to set aside a sentence under [N.Y. Crim. Proc. Law] § 440.20 may not be denied on the basis that the asserted ground could have been raised on appeal but was not").

Under 28 U.S.C. § 2254(b)(2), a district court now has the discretion to deny habeas petitions on the merits, notwithstanding the failure to exhaust certain claims. As discussed further below, the consecutive-sentencing is not cognizable on federal habeas review, and must be dismissed.

**B.    Erroneous Instruction on Rebuttable Presumptions (Ground Three)**

Petitioner contends, as he did on direct appeal, that the convictions for second degree criminal possession of weapon (former P.L. § 265.03(2)) cannot stand because the trial court erred by "allowing two legal presumptions to be charged together," i.e., "the Automobile Presumption, in conjunction with the Possession of a Firearm Unlawfully Presumption". That is, Petitioner contends that it was improper to rely on a statutory presumption of possession of a weapon (P.L. § 265.15(2)) to prove the ultimate presumption, i.e., intent to use the weapon unlawfully (P.L.

§ 265.15(3)). The Fourth Department summarily denied the claim. Mitchell, 77 A.D.3d at 1378 ("We have reviewed the remaining contentions . . . and conclude that they are without merit."). That ruling constituted an "adjudication on the merits" subject to AEDPA deference. See Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011); accord Acosta v. Artuz, 575 F.3d 177, 189 n.5 (2d Cir. 2009). Petitioner must demonstrated that it was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, in order to obtain habeas relief. See id.

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." DelValle v. Armstrong, 306 F.3d 1197, 1201 (2d Cir. 2002). Before a federal court may overturn a conviction based upon a challenged jury charge, it must determine "not merely that the instruction [was] undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was granted to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). The Supreme Court has also held that it is a "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Id. at 146-47.

The Due Process Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, requires the prosecution to prove guilt beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). If a jury could construe the court's instructions as creating an "irrebuttable direction," or a mandatory, burden-shifting presumption on an element of the crime charged, a defendant's due process rights are violated. Sandstrom v. Montana, 442 U.S. 510, 514 (1979).

Under the version of the Penal Law in effect at the time of Mitchell's trial, a person was guilty of second degree criminal possession of a weapon "when, with intent to use the same unlawfully against another: . . . [h]e possesses a loaded firearm. . . ." N.Y. PENAL LAW § 265.03(2), added L.1974, c. 1041, § 3; amended L.1998, c. 378, § 4, eff. Nov. 1, 1998. For purposes of a weapons-possession offense, "the intent element is satisfied if the defendant intended to use the weapon unlawfully against another at any time during the period of possession, including when the weapon was allegedly used for the alleged unlawful act." People v. Muhammed, 17 N.Y.3d 532, 545 (2011); see also id. at 543 (citing (CJI2d (N.Y.) Culpable Mental States—Intent ("The intent can be formed, and need only exist, at the very moment the person engages in prohibited conduct or acts to cause the prohibited result, and not at any earlier time[.]"). To prove constructive possession of a weapon, "the prosecution "ha[s] to demonstrate defendant's

ability or intent to exercise dominion and control over the [weapon][.]" People v. Perez, 125 A.D.2d 236, 237 (1st Dept. 1986) (citing N.Y. PENAL LAW §10.00(8)).

Under New York law, a jury may make the following permissive presumptions when a gun is recovered from an automobile and when someone unlawfully possesses a weapon: First, "the presence in an automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such vehicle at the time such weapon . . . is found . . . ." N.Y. PENAL LAW § 265.15(3). Second, the "possession by any person of any . . . weapon . . . is presumptive evidence of intent to use the same unlawfully against another." N.Y. PENAL LAW § 265.15(4).

The trial court instructed the jury on both presumptions, as set forth below in pertinent part:

> The presence in an automobile of any firearm is presumptive evidence of its possession by all persons occupying the automobile at the time the weapon was found. Possession of a weapon is presumptive evidence of intent to use the same unlawfully against another. . . . If you find that a person is in possession of a weapon, it's presumptive evidence of his intent to use the same unlawfully against another.

T.527-28. The trial court repeatedly instructed the jury that the presumptions were permissive, in that they did not mean the jurors were required to adopt them:

> That means that you may infer that in the one instance that possession of the weapons in the car is-is by everyone in the car or you may choose to ignore that presumption. You are free to accept the presumption that if you find the defendant was in possession of the

-13-

weapons that he intended to use them unlawfully against another or you may choose to disregard that presumption and not consider that as applying to this case. So you're free to use the presumption in this given case, you're free to choose not to, based on the evidence as you find it to be in this particular case.

Id.

The Supreme Court has explained that its caselaw considering the validity of permissive statutory presumptions such as the one involved in Mitchell's case "have rested on an evaluation of the presumption as applied to the record before the [c]ourt." County Court of Ulster County, N.Y. v. Allen, 442 U.S. 140, 163 (1979) ("Allen") (analyzing New York's presumption for possession of weapons found in an automobile). A permissive presumption-one that permits but does not require the jury to find the presumed fact-satisfies due process if, as applied in the particular case, there is a "'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is 'more likely than not to flow from' the former." Id. at 165; see also id. at 167 ("As long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need only satisfy the [rational connection] test."); Tot v. United States, 319 U.S. 463, 467-68 (1943) ("[A] statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience."). In assessing

-14-

the viability of a presumption, the court must determine, with substantial assurance, that the presumed fact is more likely than not to flow from the proved fact upon which it is made to depend. Leary v. United States, 395 U.S. 6, 33, 36 (1969).

It was not an unreasonable application of Allen to reject Mitchell's claim regarding the improper "pyramiding" or "piggybacking" of presumptions since there was a rational connection between the basic facts that the prosecution proved, summarized below, and the ultimate facts presumed (i.e., that Petitioner's presence in the van along with a quantity of weapons is presumed to mean he possessed those weapons, and that Petitioner's possession of those weapons is presumed to mean he intended to use them unlawfully). Shortly before 1:00 a.m. on October 26, 2003, Patricia Fraser and her granddaughter were asleep in the second-floor bedroom of 28 Shelter Street in the City of Rochester when Frasier was awakened by "a lot of gunshot, bullets . . . hitting the house, down and up." Her son lived in the downstairs portion of the duplex, at 26 Shelter Street, but he was not home at the time of the shooting. Inspecting the damage after police arrived later that morning, Frasier noticed bulled holes in both the upstairs and downstairs parts of the house. T.209-13, 219-20.

Officer Jennifer Morales of the Rochester Police Department was parked in an unmarked care in front of 155 Shelter Street

-15-

working undercover surveillance due to recent shootings in the area. Just before 1:00 a.m., she hard about four gunshots. Within a matter of seconds, she saw a white van with its lights off parked in the middle of the street in the area of 26-28 Shelter Street. She then heard fifteen to twenty shots fired in rapid succession, and saw the van drive away. T.303-10.

Morales, along with Ronald Slapelis and other officers who had been working the Shelter Street detail, pursued the van. Slapelis had heard gunshots just before 1:00 a.m. while parked about fifty feet away from Shelter Street on Lloyd Street. After hearing the shots, Slapelis drove towards Shelter Street where he saw a van traveling west. After the van was stopped by the police, its six occupants were ordered to exit.  Petitioner, who was driving, was wearing a bullet-proof vest under his sweatshirt. T.250-66, 313-14, 296-300.

The police later discovered the following firearms hidden under the van's driver's-side "rear panel": a loaded and operable Rossi .38 caliber revolver holding one spent round; a loaded and operable AMT .380 caliber semi-automatic handgun; a loaded and operable Ruger nine millimeter semi-automatic handgun; an operable Norinco "MAK 90" assault rifle with a banana clip, a shortened stock, and an empty clip capable of holding thirty rounds of 7.62 ammunition; an unloaded but operable Smith & Wesson .38 caliber revolver; and an operable Taurus .357 Magnum revolver holding six

spent shell casings. T.317-18, 335-43, 352-54, 400-13, 423-24, 431-49, 468-69. Petitioner was wearing a bullet-proof vest under his sweat-shirt, and the police found a second vest in the van. T.326-27. From the floor of the van, the police recovered three rounds of nine millimeter ammunition, T.323, and a number of spent 7.62 shell casings, T.329-30, 388-90. Ballistics testing on the bullets, bullet jackets, and cartridge cases recovered from in and around 26-28 Shelter Street revealed that at least one of the bullets was fired from the Taurus revolver and at least six of the bullets were fired from the Norinco assault rifle. T.449-70, 360-69, 373-83, 391-99, 401-13. Fifteen recovered cartridge cases could have been fired from the Norinco assault rifle. T.470.

Based upon the prosecution's proof, there was clearly a rational connection between the proven facts and the presumed fact of Mitchell's possession of one or more weapons. It was more likely than not that Petitioner was aware of the presence of the unlicensed guns, that the guns were within his immediate control and reach, and, accordingly, that Petitioner had the ability to exercise the statutorily required "dominion and control," N.Y. PENAL LAW §10.00, over the weapon so as to satisfy the element of possession. See, e.g., In the Matter of John N., 168 A.D.2d 386, 387 (1st Dept. 1990) (accused in rear of automobile possessed guns found under front seat); People v. Chamblin, 146 A.D.2d 707, 707 (2d Dept. 1989) (defendant seated in rear of automobile possessed

-17-

pistol and sawed-off shotgun that had been hidden, respectively, under the driver's and front passenger's seats). Likewise, there was a rational connection between the presumed fact and the proven fact of Mitchell's intent to use the weapons unlawfully as his intent could be inferred from the ballistics testing which indicated, inter alia, that two of the loaded guns found in the van were the source of physical evidence recovered from 26-28 Shelter Street. See People v. Taylor, 121 A.D.2d 581, 582 (2d Dept. 1986) (jury could properly have inferred the requisite intent from the circumstances surrounding the shooting) (citing People v. Bracey, 41 N.Y.2d 296, 301-02 (1977)).

Petitioner's claim that the permissive presumptions shifted the prosecution's burden of proof accordingly does not warrant habeas relief. See James v. Goord, No. 02 Civ. 1174, 2004 WL 1207906, at *7-8 & n.12 (S.D.N.Y. June 1, 2004) (denying habeas claim that trial court erred by charging both "automobile presumption" and "intent to use weapon" presumption under N.Y. Penal Law §§ 265.15(3), (4)); People v. Purcell, 34 A.D.3d 848, 848 (2d Dept. 2006) (denying "defendant's claim that the Supreme Court erred in charging the jury that it could rely upon the statutory presumption of possession of a weapon under Penal Law § 265.15(3) to presume that the defendant had intent to use the weapon unlawfully under Penal Law § 265.15(4)").

C.    **The Fourth Amendment Claims (Grounds Four and Five)**

Petitioner contends that his Fourth Amendment rights were violated when the police stopped his van and later when they searched the vehicle after impounding it. This claim is barred pursuant to Stone v. Powell, 428 U.S. 465 (1976), because Petitioner had a full and fair opportunity to litigate it before the state courts. Id. at 482 (holding that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas relief will not lie for a contention that evidence recovered through an illegal search or seizure was introduced at trial); accord Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002) (citing Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992)). The Stone doctrine applies to all Fourth Amendment claims, such as illegal stops or arrests, or searches based on less than probable cause. Cardwell v. Taylor, 461 U.S. 571, 572-73 (1983) (per curiam).

Stone requires only that the state provide petitioner with the "opportunity" to litigate a Fourth Amendment claim. McPhail v. Warden, Attica Corr. Fac., 707 F.2d 67, 69-70 (2d Cir. 1983). The Second Circuit has interpreted Stone to bar review of a Fourth Amendment claim unless the petitioner can demonstrate either (1) that the state failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated; or (2) that the state had such procedures in place, but that the petitioner was

unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." Capellan, 975 F.2d at 70.

Here, Petitioner does not and cannot contend that New York failed to provide appropriate corrective procedures to address his Fourth Amendment claims. "[T]he federal courts have approved New York's procedure for litigating Fourth Amendment claims," set forth in C.P.L. § 710 et seq. Capellan, 975 F.2d at 70 n.1 (citations and internal quotation marks omitted). It is undisputed that Petitioner took full advantage of New York's corrective procedures by moving to suppress all physical evidence seized. He was granted a suppression hearing, but the trial court denied the suppression motion.

Mitchell likewise has not demonstrated that there was an "unconscionable breakdown" in the process, or that the state courts "failed to conduct a reasoned method of inquiry into relevant questions of fact and law." Capellan, 975 F.2d at 71 (internal quotations and citation omitted); Shaw v. Scully, 654 F. Supp. 859, 864 (S.D.N.Y. 1987). Mitchell believes that there was an "unconscionable breakdown" essentially because the state courts reached, in his opinion, an incorrect conclusion. However, a "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." Capellan, 975 F.2d at 72.

-20-

Petitioner clearly received a full and fair opportunity to litigate his Fourth Amendment claims in the state courts. He should now be barred from further review of these claims in this habeas proceeding. See, e.g., Plunkett v. Johnson, 828 F.2d 954, 956 (2d Cir.1987) (holding that petitioner, convicted of grand larceny under state law, was not entitled to habeas corpus relief on ground that evidence obtained in unconstitutional search or seizure was introduced at his trial, where issue was fully litigated in suppression hearing, and was subject to state appellate review).

**D.    The Consecutive Sentencing Claim (Ground Six)**

Petitioner contends that the Fourth Department erred in failing to modify his sentence for reckless endangerment (count fifteen of the indictment) so that it would run concurrently rather than consecutively with his sentences for second degree possession of a weapon.

Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations omitted). Rather, a petitioner must demonstrate that his conviction resulted from a state court decision that violated federal law. See, e.g., id. at 68 (citations omitted). "[T]here is 'no constitutionally cognizable right to concurrent, rather than consecutive, sentences.'" United States v. McLean, 287 F.3d 127, 136 (2d Cir.

-21-

2002) (quoting <u>United States v. White</u>, 240 F.3d 127, 135 (2d Cir. 2001) (quoting <u>Garrett v. United States</u>, 471 U.S. 773, 793 (1985) ("The presumption when Congress creates . . . distinct offenses is that it intends to permit cumulative sentences. . . ."). As a result, federal habeas courts in this Circuit have uniformly held that "the question of whether sentences should be made to run concurrently or consecutively is purely a question of state law and is not cognizable on a habeas petition." <u>Olds v. New York State</u>, No. 06-CV-6308, 2010 WL 2265037, at *4 (E.D.N.Y. June 1, 2010) (internal quotation marks omitted; collecting cases); <u>accord</u>, <u>e.g.</u>, <u>Montstream v. Superintendent, Bedford Hills Corr. Fac.</u>, No. 06-CV-0787, 2011 WL 284461, at *2 (W.D.N.Y. Jan. 4, 2011), <u>report adopted</u>, 2011 WL 283252 (W.D.N.Y. Jan. 25, 2011). Moreover, because Petitioner's "sentence did not exceed the maximum sentence permissible for a felony under N.Y. Penal Law § 70.00 . . . there is no ground for habeas relief." <u>Diaz v. LeFevre</u>, 688 F. Supp. 945, 949 (S.D.N.Y. 1988).

## IV.  Conclusion

For the reasons discussed above, the petition (Dkt. #1) filed by Lateik Mitchell is dismissed with prejudice. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and FED. R. APP. P. 24(a)(3),

that any appeal from this Decision and Order would not be taken in good faith and therefore the Court denies leave to appeal as a poor person. See Coppedge v. United States, 369 U.S. 438, 445-46 (1962).

Any application for leave to appeal in forma pauperis must be made to the Second Circuit Court of Appeals in accordance with FED. R. APP. P. 24(a)(1), (4), & (5). See id. Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          June 14, 2012